**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **AMELIA HUTCHINGS,** | ) | |
| **Plaintiff,** | ) | |
| **VS.** | ) | **Civil Action No. SA-06-CV-245-XR** |
| **JOHN E. POTTER, Postmaster General,** | ) | |
| **Defendant.** | ) | |

**ORDER**

On this date, the Court considered Defendant's motion for summary judgment (Docket No. 22). For the reasons discussed below, the motion for summary judgment is GRANTED. Plaintiff's race discrimination, sex discrimination, hostile work environment, and retaliation claims are DISMISSED WITH PREJUDICE. The Clerk is instructed to close this case.

**I. Factual & Procedural Background**

Plaintiff Amelia Hutchings has sued Defendant John E. Potter, in his official capacity as Postmaster General of the United States Postal Service ("USPS") for race discrimination, sex discrimination, retaliation, and hostile work environment claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended by the Civil Rights Act of 1991.

Hutchings began working for USPS on or about October 27, 1997. She is employed as a mail processing clerk / operator.[1] On October 8, 2004, Plaintiff was an "unassigned regular" clerk,

[1]Prior to her employment with the USPS, Hutchings served in the United States Army for 22 years.

working a split shift between the hours of 7:00 p.m. and 3:30 a.m. at the San Antonio main mail processing facility. Will Washington was supervisor of Tour I, which was the graveyard shift that began at 11:00 p.m. Tour I could not begin working on their assigned mail processing until Tour III (the 3:00 p.m. - 11:30 p.m. shift) finished their work. On October 8, 2004, Washington, as the supervisor of distribution operations for Tour I, wanted Tour III supervisor, George Bay, to lead his shift to process the mail faster so that Washington's shift could start work on their mail.

At approximately 11:25 p.m., Washington noticed that one of the large automated mail processing machines (a Delivery Bar Code Sorter) was not running. Washington verbally directed Hutchings to start the machine in a manner that she perceived to be a "demeaning, drill sergeant" tone. In particular, Hutchings alleges that Washington "uncivilly addressed" her as "'you' in a demeaning, condescending, disrespectful, and undignified manner and, using a 'drill sergeant' tone of voice, he barked out 'come over here and run this machine.'" Complaint, ¶ 18. Plaintiff alleges that there were two African-American employees standing nearby, one male and one female, and neither was pointed at, nor addressed in the same manner by Washington. Complaint, ¶ 19.

The first physical contact alleged–"the nudge"–occurred when Washington "took over the keyboard operation [Hutchings] was putting the program in." EEO Hearing Transcript at 36:11-12. Plaintiff alleges that while she was inputting information into the machine as instructed, Washington told her "you don't need all that information" and "abruptly nudged [her] away from her keyboard with his body and took over the machine." Complaint, ¶ 20. The second physical contact alleged–"the push"–occurred a few moments later when, while Plaintiff was loading mail into a machine, she "felt something hit me from behind" and she was pushed "two and a half to three feet so he [Washington] could get into her workspace to load mail from one mail container into another."

Complaint, ¶¶ 20, 22 (Washington took over "work he was not authorized to perform [under] the Clerk Bargaining Work Policy" when he nudged and pushed Hutchings away from her work station). Plaintiff's supervisor, George Bay, testified that Washington bumped Hutchings twice with his shoulder or hip to move her out of the way. See EEO Hearing Transcript at 159:11 - 161:12.

Plaintiff immediately complained that Washington was doing bargaining unit work, and when Washington allegedly ignored her, she "stepped in between [Washington] and the [loading] cart and blocked his way." Washington then told Hutchings to get out of his way, which she did, but she again complained that Washington was doing her job and that "management is the reason why we lost our jobs." Complaint of Discrimination at Pg. 4-5 (December 3, 2004).

Hutchings was not physically injured by the nudge or the push, but she was upset, so she asked to leave work at midnight rather than her usual ending time of 3:30 a.m. Plaintiff was granted sick leave by the USPS to leave work early that night. Hutchings Dep. at 112:23 - 113:10. On October 19, 2004, Hutchings filed a union grievance regarding the nudge and push incident. Her grievance focused on the fact that Washington had performed bargaining unit work. Hutchings received a settlement of her grievance, and she received overtime pay in the amount of $7.50 for 15 minutes of work allegedly performed by Washington instead of her. Hutchings Dep. at 67:14 - 69.20. In contrast to her nominal monetary recovery on the union grievance, Hutchings now seeks $300,000 in non-economic damages, pre- and post-judgment interest, attorney's fees, and costs in this case. Complaint, ¶ 52.

Hutchings initially contacted the EEO office on October 15, 2004, and filed her formal EEO Complaint of Discrimination on December 2, 2004, alleging sex, race, age, disability discrimination, retaliation, and hostile work environment, in connection with the October 8, 2004 incident. The

three issues accepted for investigation and adjudicated at the evidentiary hearing on September 22, 2005 were whether Hutchings was subjected to discrimination based on race (Caucasian), color (white), sex (female), age (DOB 5/8/1950), disability (Post Traumatic Stress Disorder) or retaliation for prior EEO activity when, on October 8, 2004, Washington spoke to her in a demeaning manner, nudger her away from the keyboard with his body, and then physically pushed her two or three feet away. EEO Hearing Tr. at 7:3-14. After completion of the EEO process, Hutchings timely filed this lawsuit on March 21, 2006.

It is undisputed that as of October 8, 2004, Will Washington had no knowledge that Hutchings had engaged in prior protected EEO activity. EEO Hearing Tr. at 33:10-13; 86:8-14. Hutchings cannot specify what part of her body was pushed by Washington, but she does not allege that she was touched or pushed in a sexual manner. EEO Dep. at 41:10 - 42:15; 45:13-15; 46:19 - 54:4. Plaintiff was not physically injured on October 8, 2004. Hutchings Dep. at 112:23 - 113:10. After October 8, 2004, Hutchings did not experience any further incidents of alleged harassment by Washington. EEO Hearing Tr. at 44:4-14. Hutchings still works with the USPS in her same job, and she has admitted in sworn answers to interrogatories that she did not sustain any lost pay or benefits as a result of Defendant's conduct. Nevertheless, she is pursuing this case to recover non-economic damages for mental anguish and emotional distress.

Plaintiff alleges that she "was physically abused and threatened on three separate instances by Mr. Will Washington, who was in her work area even though he was not her supervisor during that shift." Complaint, ¶ 21. Plaintiff alleges that she is a white female in her unit among other employees of other races and genders "who are not physically threatened and intimidated by Will Washington" as she was that night. Complaint, ¶ 23. Plaintiff alleges that she has suffered adverse

consequences affecting the terms, conditions, or privileges of her employment because she had to "work under the supervision of Mr. Will Washington who physically abused and threatened her." Complaint, ¶ 24.

Plaintiff has filed a separate EEO Complaint against another former supervisor, Max Valdez, alleging that he also created a hostile work environment for Plaintiff based upon conduct which occurred in November of 2003. Those allegations are the subject of a separate lawsuit ("*Hutchings I*"), which is pending before Senior District Judge William Wayne Justice, No. SA-05-CV-715-WWJ.

Although Plaintiff's allegations against Valdez are the subject of a different lawsuit, Hutchings has alleged retaliation, age, and disability discrimination claims in this case regarding actions and statements made by Valdez shortly after the nudge and push incident of October 8, 2004. Complaint, ¶¶ 28-34. She claims that Valdez refused to investigate the incident after it was referred to him by Plaintiff's supervisor, George Bay. Complaint, ¶ 30. Hutchings had previously filed an EEO Complaint against Valdez. Complaint, ¶ 29. Valdez allegedly denied that he was ever assigned to investigate the claim. *Id.* Plaintiff claims that she was subject to disability discrimination because Valdez allegedly told a union steward at some unidentified time that "the USPS should not hire disabled veterans, but should hire younger workers that can get the job done." Complaint, ¶ 31. Finally, Plaintiff alleges that Valdez "told a union steward that the reason he harassed [Hutchings] was because he had complaints from co-workers about her work." Complaint, ¶ 33.

On February 2, 2005, Defendant filed his motion for summary judgment. *See* Docket No. 22. Defendant introduces his motion with the following introductory statement: "The legal issue to be decided by the Court is whether an isolated incident of non-sexual physical contact between a

supervisor and a Postal employee and [sic] an allegedly demeaning, 'drill sergeant tone'–neither of which contained any reference to Plaintiff's gender, race, or prior EEO activity–were sufficiently severe or pervasive to establish a hostile work environment." Motion for Summary Judgment, Pg. 1-2. Defendant argues that the age and disability discrimination claims alleged in Plaintiff's EEO Complaint were not alleged in any count of her live Complaint and must fail as a matter of law because Plaintiff's supervisors did not have knowledge of Plaintiff's alleged disabilities, those alleged disabilities do not substantially limit any major life function, and Plaintiff acknowledged that her claim of age discrimination was based solely on her own subjective feeling. Hutchings Dep. at 106:3-8. Defendant argues that Plaintiff's retaliation claim against Washington must fail because he had no knowledge of her prior EEO activity. EEO Hearing Tr. at 33:10-13; 86:8-14. Defendant argues that Plaintiff's race, sex, age, disability, and retaliation claims fail as a matter of law because Plaintiff has suffered no adverse employment action. Defendant argues that Plaintiff's remaining hostile work environment claim fails as a matter of law because Plaintiff's factual allegations, even if taken as true, do not establish the "severe or pervasive" conduct necessary to establish a hostile work environment claim. Defendant also argues that Plaintiff cannot demonstrate that the alleged discriminatory or harassing conduct was because of Plaintiff's membership in a protected class.

In her response, Plaintiff argues that she was subject to retaliation and disability discrimination by Valdez. Plaintiff also argues that Defendant took no remedial action against Washington or Valdez after the nudge and push incident occurred. Plaintiff argues that her retaliation claim would survive summary judgment because she suffered an adverse employment action that would have been materially adverse to a reasonable employee.

In his reply, Defendant argues that this case is limited to the alleged actions by Washington

and any allegations against Valdez should be addressed in *Hutchings I*. Defendant argues that Plaintiff's claim of disparate treatment does not establish a hostile work environment because the alleged harassment was not severe or pervasive as a matter of law. Defendant argues that he had no obligation to take remedial action against Washington or Valdez because Plaintiff's claims have no merit, and mere violations of USPS policy does not establish discrimination or a hostile work environment.

## II. Legal Analysis

### A. Summary judgment standard of review.

Defendant has moved for summary judgment. Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.*, 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073 (1998).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322-23;

*Anderson*, 477 U.S. at 257; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). "[T]he court must review the record 'taken as a whole.' " *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 n. 14 (5th Cir.1993)); *Messer v. Meno*, 130 F.3d 130, 134 (5th Cir.1997), *cert. denied*, 525 U.S. 1067 (1999). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson*, 477 U.S. at 255; *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas*, 190 F.3d 310, 314 (5th Cir.1999); *Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir.1998). The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir.1999); *accord Little*, 37 F.3d at 1075 (" [w]e do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.") (citing *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Only reasonable inferences can be drawn from the evidence in favor of the nonmoving party. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 469 n. 14 (1992) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1012 (2nd Cir.1989)). The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429

(5th Cir.1996) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994)); *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson*, 477 U.S. at 247-48).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp*., 477 U.S. at 322; *Wenner*, 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23.

**B. Plaintiff's hostile work environment claim fails as a matter of law because the alleged harassment was not sufficiently severe and pervasive so as to alter the conditions of employment and create an abusive work environment.**

To prevail on a hostile work environment claim, Plaintiff must prove that: 1) she belongs to a protected group; 2) she was subjected to unwelcome harassment; 3) the harassment complained of was based on her membership in that protected group; and 4) the harassment affected a term, condition, or privilege of her employment. *See Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir. 2003) (quoting *Celestine v. Petroleos de Venezuella, S.A.*, 266 F.3d 343, 353-54 (5th Cir. 2001)). Plaintiff must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). The fact-finder must consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, and whether it unreasonably interferes with an employee's work performance. *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000). For harassment to affect a "term, condition, or privilege of employment" it must be "sufficiently severe

or pervasive so as to alter the conditions of employment and create an abusive working environment." *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir.1999). If the conduct alleged by Plaintiff is not severe or pervasive, summary judgment should be granted for Defendant. *Butler v. Ysleta Ind. Sch. Dist.*, 161 F.3d 263, 269-270 (5th Cir. 1998).

The Court finds that the facts alleged by Plaintiff, even if taken as true, do not constitute severe and pervasive harassment sufficient to support a hostile work environment claim. A hostile work environment exists "when the workplace is permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21. To amount to a change in the terms and conditions of employment, the conduct complained of must be "extreme." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "[I]solated incidents [of harassment] (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788; *see Cross v. FPP Operating Partners, L.P.*, No. Civ. A. 799CV160-R, 2001 WL 1143259, *11 (N.D. Tex. Sept. 25, 2001) ("[The] working environment must be both subjectively and objectively hostile, which implies a requirement that the Plaintiffs be aware of the overt racism on a daily basis while employed . . . . [T]he working conditions [Plaintiffs] allege do not provide sufficient evidence of an intolerable working environment that overtly differentiated between employees because of their race . . . . Plaintiffs bears the burden of proof that they knowingly faced racial hostility on a daily basis").

The Court finds that the conduct complained about by Plaintiff was an isolated incident, which was over in less than 35 minutes and did not recur. EEO Hearing Tr. at 44:4-14. Although Hutchings subjectively perceived that Washington's comments were made in a demeaning or condescending manner, it is undisputed that his comments made no reference to Plaintiff's race, sex,

age, disability, or prior EEO activity.[2] Plaintiff further acknowledged that she was not nudged or pushed by Washington in a sexual manner. EEO Dep. at 41:10 - 42:15; 45:13-15; 46:19 - 54:4. One of the defining characteristics of a viable hostile work environment claim is that the discriminatory conduct adversely affected the plaintiff's ability to perform her job. *See Shepherd v. Controller of Public Accounts of the State of Tex.*, 168 F.3d 871, 874 (5th Cir. 1999) ("Title VII is intended only to prohibit and prevent conduct 'that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace"). Hutchings admitted in prior sworn testimony that Washington's conduct never impaired her work performance. EEO Dep. at 71:7-25; EEO Hearing Tr. at 43:18 - 44:3. Based on this evidence, the Court concludes that the conduct alleged was not severe and pervasive. The Court believes that the October 8, 2004 incident was a minor, isolated workplace dispute involving a petty slight or minor annoyance that was completely unrelated to Plaintiff's protected status. *See Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998) (Title VII does not set forth "a general civility code for the American workplace"); *see Faragher*, 524 U.S. at 788 (judicial standards for sexual harassment must "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing'"). Plaintiff's hostile work environment claim is

---

[2]The Court also finds that Plaintiff's hostile work environment claim fails as a matter of law because Plaintiff has failed to demonstrate that the allegedly hostile conduct was based upon Plaintiff's protected status. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 n.2 (5th Cir. 1996) ("Sex-neutral hostile conduct cannot be used to support a hostile [work] environment claim. Title VII does not protect employees from hostile conduct that is not based on their protected status"); *see McCray v. DPC Industries, Inc.*, 942 F. Supp. 288, 293 (E.D. Tex. 1996) ("To establish a prima facie case of 'hostile work environment' based on race, a plaintiff must show more than he was treated badly and that he was black . . . . [A]n abusive work environment required a plaintiff to 'prove more than a few isolated incidents of racial enmity" . . . . Instead, 'there must be a steady barrage of opprobrious racial comments'") (internal citations omitted).

DISMISSED WITH PREJUDICE.

**C. Plaintiff's race and sex discrimination claims fail as a matter of law because Plaintiff has failed to show that she suffered an adverse ultimate employment decision.**

In the Fifth Circuit, plaintiffs must still establish an adverse ultimate employment decision to prevail on their race or sex discrimination claims. *Pryor v. Wolfe*, 196 Fed. Appx. 260, 262-63 (5th Cir. 2006) (holding that *Burlington*'s "materially adverse" standard only applies to Title VII retaliation claims, and plaintiffs must still establish an adverse "ultimate employment decision" to prevail on their Title VII discrimination claims). In the Fifth Circuit, only "ultimate employment decisions" such as "hiring, granting leave, discharging, promoting, and compensation" are actionable "adverse employment actions" for purposes of Title VII discrimination claims. *Id.* It is undisputed that Hutchings did not suffer an "ultimate employment decision" after the nudge and push incident. Plaintiff's subjective belief of discrimination along is not sufficient to warrant judicial relief. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999). Additionally, Plaintiff has failed to establish that her race or sex was a factor in the nudge and push incident. Plaintiff's race and sex discrimination claims are DISMISSED WITH PREJUDICE.

**D. Plaintiff's retaliation claim fails as a matter of law because Plaintiff has failed to show that she suffered a materially adverse employment action.**

In order to prevail on a retaliation claim, Plaintiff must demonstrate that the "employer actions would have been materially adverse to a reasonable employee or job applicant." *Burlington Northern and Santa Fe Ry. Co. v. White*, 126 W. Ct. 2405, 2409 (2006). In other words, the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination. *Id.* However, "material adversity" is distinct from "trivial harms": "[a]n employee's decision to report discriminatory behavior cannot immunize

that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 2415.

Defendant argues that Plaintiff's retaliation claim involves actions taken by Valdez and "Plaintiff's Complaint [in this case] is limited to the alleged actions by Mr. Washington." Reply at Pg. 2. The Court disagrees. *Hutchings I* involves actions taken by Valdez in November of 2003; this case involves actions taken by Valdez immediately after the October 8, 2004 incident involving Washington. Plaintiff appears to base her retaliation claim in this case on actions taken by Valdez and Washington.

To state a *prima facie* case of retaliation, Plaintiff must prove that she (1) was engaged in activity protected by Title VII; (2) was subject to an adverse employment action that a reasonable employee would have found materially adverse, which means that it might have dissuaded a reasonable worker from making or supporting a charge of discrimination; and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Burlington*, 2006 WL 1698953, at *10 (modifying second element); *Hockman v. Westward Communications, LLC,* 407 F.3d 317, 330 (5th Cir. 2004) (first and third element).

Plaintiff's retaliation claims against Washington and Valdez fail as a matter of law because Hutchings did not experience a materially adverse employment action. The Court finds that the harm suffered by Hutchings, if any, was trivial. Plaintiff did not sustain any lost pay or benefits as a result of Washington's or Valdez's conduct. Hutchings seeks only mental anguish and emotional distress damages stemming from the nudge and push incident. Hutchings' subjective belief that Washington's or Valdez's actions were retaliatory, without more, is not sufficient to survive summary judgment. *See Haley v. Alliance Compressor LLC*, 391 F.3d 644, 651 (5th Cir. 2004).

Plaintiff might have been annoyed or distraught as a result of this minor, isolated workplace dispute; however, "petty slights or minor annoyances" do not constitute materially adverse employment actions for purposes of a Title VII retaliation claim. *See, e.g., Grice v. FMC Technologies, Inc.*, No. 06-20509, 2007 WL 329265, *5 (5th Cir. Jan. 30, 2007). The Court finds that Washington and Valdez's actions would not dissuade a reasonable employee from reporting discrimination. Additionally, Plaintiff's retaliation claim against Washington must fail because he had no knowledge of her prior EEO activity, which demonstrates that was no causal connection between the nudge and push incident and Plaintiff's EEO activity. EEO Hearing Tr. at 33:10-13; 86:8-14. Plaintiff's retaliation claim against Washington and Valdez is DISMISSED WITH PREJUDICE.[3]

**E. USPS' failure to take remedial action against Washington and Valdez is irrelevant because no unlawful harassment or discrimination occurred.**

In her reply, Plaintiff opined at length that USPS failed to take remedial action against Washington and Valdez after the nudge and push incident. The Court finds that this fact is irrelevant to the viability of Plaintiff's Title VII claims because the Court has already determined that unlawful discrimination or harassment did not occur. Even assuming that USPS had an obligation under its own internal policies to investigate Hutchings' claims, a mere violation of policy, standing alone, does not establish discrimination or retaliation under Title VII. *Upshaw v. Dallas Heart Group*, 961 F. Supp. 997, 1002 (N.D. Tex. 1997).

## III. Conclusion

Defendant's motion for summary judgment is GRANTED (Docket No. 22). Plaintiff's race

[3]To the extent that Plaintiff alleges age or disability discrimination claim against Valdez based on alleged comments he made to a union steward at some unidentified time, those claims are also dismissed with prejudice.

discrimination, sex discrimination, hostile work environment, and retaliation claims are DISMISSED WITH PREJUDICE.[4] The Clerk is instructed to close this case.

It is so ORDERED.

SIGNED this 28th day of March, 2007.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

[4]Plaintiff only alleges race discrimination, sex discrimination, retaliation, and hostile work environment claims in her Complaint. To the extent that Plaintiff's Complaint could be construed to allege age or disability discrimination, those claims are also dismissed with prejudice. Washington and Valdez did not have knowledge of Plaintiff's alleged disabilities, EEO Investigative Summary at Pg. 12, EEO Hearing Tr. 42:8-23; 85:24-86:7, and Plaintiff's age discrimination claim is based solely on her subjective feeling. Hutchings Dep. at 106:3-8. Plaintiff presented no evidence of the age of other similarly situated employees, and she presented no evidence that her alleged disabilities substantially limited her major life activities.